**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY WILLIAMS** | : | **Case No. 07-CV-2051 (02-CR-80)** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **UNITED STATES OF AMERICA** | : | **MEMORANDUM & ORDER** |
| **Respondent.** | : | |

Before the Court are the following six (6) motions brought by *pro se* Petitioner Anthony M. Williams ("Williams"): (1) Motion to Modify Term of Imprisonment (Doc. 202); (2) Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 204); (3) Motion for Summary Judgment (Doc. 207); (4) Motion to Hold in Abeyance Motion to Modify Term of Imprisonment (Doc. 208); and (5) two identical motions for Status Hearings (Docs. 213 and 214).[1]  For the reasons articulated below, Williams' Motion to Modify Term of Imprisonment is **DENIED**, his Motion to Hold in Abeyance is **DENIED** as moot, his Motion for Summary Judgment is **DENIED**, his Motions for Status Hearings are **DENIED** as moot, and his § 2255 Motion is **DENIED**.  Williams' case, therefore, is **DISMISSED**.

I.     **BACKGROUND**

    A.     **The Superseding Indictment**

On July 24, 2002, Williams was charged in a nine-count superseding indictment along with five co-defendants.  Specifically, the indictment charged Williams with the following:

---

[1]Unless otherwise noted, all document references ("Doc.") are to the docket in the corresponding federal criminal action, Case No. 1:02-CR-80. Williams' § 2255 motion is Doc. 1 of this civil action, Case No. 1:07-CV-2051.

- •     Count 1:     conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846;

- •     Count 2:     conspiracy to commit armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d) and § 371;

- •     Counts 3, 5:     carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and (2);

- •     Count 4:     armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d) and 2; and

- •     Count 6:     felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and punishable under 19 U.S.C. § 924(a)(2).[2]

Williams was arraigned on the superseding indictment on August 1, 2002, and entered a plea of not guilty.  (Doc. 67.)

Pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, on October 16, 2002, the government gave Williams notice of its intent to rely on his previous felony drug offenses to enhance his sentence. (Doc. 98.)  Specifically, the government identified the following prior convictions in the Superior Court of California, Los Angeles County: (1) sale of cocaine on or about June 10, 1985, Case No. A762469; (2) possession of marijuana for sale on or about March 13, 1987; (3) possession of controlled substances for sale on or about May 9, 1986, Case No. A774240; and (4) possession of cocaine for sale on or about June 20, 1989, Case No. A984062.  (*Id.*)

**B.**     **Williams' Guilty Plea**

On November 4, 2002 – the day trial was scheduled to commence and after the jury was selected and sworn – Williams pled guilty to Counts 1, 4, 5, and 6 of the superseding indictment

---

[2]Williams was not named in Counts 7-9 of the superseding indictment.

pursuant to a Rule 11(e)(1)(C) oral plea agreement with the government.[3]  The oral agreement

provided, in part, that Williams was a "career offender" under Section 4B1.1 of the United States

Sentencing Guidelines ("U.S.S.G.").  (*See* Doc. 203-1 at 2-3) (the government stated that, as part of

the oral plea agreement, it "would accept that Mr. Williams is a career offender; therefore, criminal

history category VI").  As part of the agreement, the parties stipulated to a specific sentence of 240

months, and the United States agreed to dismiss Counts 2 and 3 of the superseding indictment,

including a count under 18 U.S.C. § 924(c)(1), which, upon conviction, would have mandated an

additional consecutive term of custody.

Prior to accepting his guilty plea, the Court specifically asked Williams, on the record,

whether he understood the plea agreement, the stipulated sentence, and the impact of the plea

agreement on his ability to appeal his sentence:

| | |
|---|---|
| THE COURT: | All right.  In this particular case there is no written plea agreement.  Do you understand that? |
| MR. WILLIAMS: | Yes. |
| THE COURT: | But there is an oral plea agreement as I understand it, under Rule 11E1(c), which is an agreement that allows the parties to stipulate to a specific sentence in a given case.  Do you understand that? |
| MR. WILLIAMS: | Yes. |
| | *          *          * |
| THE COURT: | In other words, while I can structure your sentence to get to 20 years, I can't give you less than 20 years and I can't give you more than 20 years if I accept the plea.  Do you understand that? |

_____

[3]In 2002, Rule 11 of the Federal Rules of Criminal Procedure was amended and reorganized so that Rule 11(e)(1)(C) is now Rule 11(c)(1)(C).  Given the timing of the plea in this case, and for ease of reference, the Court will continue to refer to Williams' plea agreement as an agreement pursuant to Rule 11(e)(1)(C).

| | |
|---|---|
| MR. WILLIAMS: | Yes. |
| | *        *        * |
| THE COURT: | All right. In this case, if you plead guilty and I accept your plea and sentence you consistent with that, you will get 20 years. That will be your sentence. Do you understand that? |
| MR. WILLIAMS: | Yes. |
| THE COURT: | And that you will have very little ability to argue to the Court of Appeals, or anyone else, that there's anything improper about that sentence, because you've agreed to it. Do you understand that? |
| MR. WILLIAMS: | Yes, ma'am. |

(*See* Doc. 203-1 at 20:1-9, 15-19; 21:3-13.) The transcript reveals that Williams understood and agreed to the terms of the Rule 11 plea agreement.

The Court accepted Williams' guilty plea and ordered preparation of a Presentence Investigation Report. (Doc. 203-1 at 35:1-8.)

### C.    The Presentence Investigation Report

The Presentence Investigation Report ("PSR") indicates, and the parties do not dispute, that in the absence of the Rule 11(e)(1)(C) agreement, Williams' Adjusted Offense Level would be 35. This number includes, among other things: (1) a seven level enhancement because Williams is a career offender under the Guidelines; and (2) a two-level reduction for acceptance of responsibility.

The PSR indicates that Williams has thirteen (13) criminal history points which corresponds to Criminal History Category VI. In addition, the PSR notes that, because Williams is a career offender, his Criminal History Category must be VI. *See* U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). Therefore, in the absence of the Rule 11(e)(1)(C) plea agreement, the advisory sentencing range applicable to

4

Williams under the Guidelines would be 376 - 449 months.[4]  The PSR recommended a total sentence of 376 months.[5]  Neither party objected to the PSR.

### D.    Sentencing

The Court held a sentencing hearing on February 19, 2003.  At the hearing, the Court explained to Williams that, because the Court accepted his Rule 11(e)(1)(C) plea agreement, the Guidelines did not apply to his sentence.  (Doc. 180 at 3:11-16.)  Although the Court discussed portions of the PSR with Williams on the record, the Court explained that both the PSR and the Guideline applications were irrelevant in light of his guilty plea and stipulated sentence.  (*Id*. at 13:8-20.)[6]  Indeed, the Court stated that, "while the guideline ranges applicable to this Defendant would place the Defendant in a custody range that is greater than the 20 years to which the Defendant pled, [] Rule 11(e)(1)(C) would essentially trump the guidelines and require the 20-year sentence."  (*Id*. at 3:11-16; *see also id.* at 11:23-25 ("In your case, the guidelines don't control, and if they did, your

---

[4]According to the PSR, the guideline range for Counts 1, 4, and 6 is 292 - 365 months. The guideline provision for Count 5 is 84 months which runs consecutive to any other term.

[5]Count 1: 240 months; Count 4: 292 months; Count 5: 84 months; and Count 6: 120 months.  Counts 1, 4, and 6 are to run concurrent with one another, while Count 5 runs consecutive.

[6]THE COURT:        As I said, to the extent you are concerned with the guideline applications and the presentence investigation report, that concern is essentially irrelevant since you pled guilty pursuant to a special provision of the federal rules that allows a Defendant and the Government to agree to a specific sentence and which, once the Court accepts the plea, becomes binding upon the Court.

So while I've explained the guideline calculations to you to some extent, I want to make sure that you understand that whatever your thoughts about those guideline calculations, they would have no affect on your sentence in any event.

(Doc. 180 at 13:8-20.)

sentence would be higher.")

Because the parties stipulated to a 20 year sentence, the Court had no discretion as it related to the applicable Sentencing Guideline range.  Accordingly, the Court sentenced Williams to the stipulated sentence of 240 months, followed by five years supervised release with special conditions. The Court further ordered Williams to pay restitution in the amount of $141,736.

Finally, the Court notified Williams that he had a right to appeal his sentence:

> Sir, your plea constituted a waiver of any right to appeal from conviction in this case, but you have a right to appeal from the sentence that I have imposed, and you have the right to counsel in connection with that appeal.  As I said, because you have agreed to a specific sentence, your appellate rights could be limited, or there could be very little basis upon which you could object to this Court's sentencing determination.

> But to the extent any appellate rights exist, then you should discuss your options with counsel at your earliest possible opportunity.  You also always have the right to appeal as it relates to any complaints you might have about the performance of the Government's counsel or the performance of your counsel, and so there may be certain appellate rights that still exist.

(Doc. 180 at 30:17-31:8.)

The Court entered the judgment of conviction on March 12, 2003.  (Doc. 150.)  Williams did not appeal his sentence.

### D.    Williams' Pending Motions

On May 3, 2007, Williams filed a Motion to Modify Term of Imprisonment Pursuant to 18 U.S.C. § 3582(C)(2), seeking a sentence reduction pursuant to Amendment 599 of the Sentencing Guidelines.[7]  (Doc. 202-2.)  On May 14, 2007, the government filed a Response in Opposition (Doc.

---

[7]Amendment 599 provides for certain changes to the commentary to U.S.S.G. § 2K2.4, and applies only to sentences imposed for convictions under 18 U.S.C. §§ 844(h), 924(c), and 929(a).  For example, Amendment 599 "prohibits a weapon enhancement to the underlying offense where there is a conviction under 18 U.S.C. § 924(c)."  *United States v. Williams*, 52 Fed. Appx. 729, 731 (6th Cir. 2002).

203).  In its opposition, the government argued that the Court should not reduce Williams' sentence because he: (1) pled guilty pursuant to Rule 11(e)(1)(C); (2) agreed to a specific sentence of 240 months; and (3) did not receive a sentence based on the applicable Sentencing Guideline range.  (*Id*. at 1.)  The government further argued that, because Williams was classified as a "career offender," Amendment 599 had no bearing on his sentence.  (*Id*. at 3.)[8]

On July 10, 2007, Williams filed the instant § 2255 Motion seeking re-sentencing in light of the Supreme Court's decision in *Lopez v. Gonzales*, 549 U.S. 47 (2006), which was issued after Williams' conviction became final.  (Doc. 204).  In *Lopez*, the Court held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."  *Id*. at 60.  Williams asserts that, in light of *Lopez*, his 1986 conviction for violating California Health & Safety Code § 11351 did not qualify as a felony under federal law, and therefore should not have been used to establish his career offender status.[9]

On July 26, 2007, the government filed a Brief in Opposition (Case No. 07-CV-2051, Doc. 3).  On August 10, 2007, Williams filed: (1) a Reply to the Government's Opposition (Doc. 206);

---

[8]It is well-established that, "once a district court accepts a plea agreement where the parties agreed on a specific sentence or sentencing range, the district court is bound by the parties' plea agreement and cannot impose a sentence greater or less severe than what is in the plea agreement."  *United States v. Peveler*, 359 F.3d 369, 377 (6th Cir. 2004)(internal citation omitted).  The Sixth Circuit has held that "the plain language of the current version of Rule 11(e)(1)(C), now Rule 11(c)(1)(C), generally precludes the district court from altering the parties' agreed sentence under 18 U.S.C. § 3582(c)."  *Id*. at 379.

Here, it is undisputed that the parties entered into a Rule 11(e)(1)(C) plea agreement, and therefore the Sentencing Guidelines did not apply to Williams' sentence.  Once the Court accepted Williams' plea agreement, it became bound by its terms, and the Court is not permitted to modify or alter the parties' stipulated sentence.  Accordingly, Williams' Motion to Modify Term of Imprisonment (Doc. 202) is **DENIED**.

[9]Notably, Williams does not challenge use of his 1989 conviction towards his career offender status.

7

(2) a Motion for Summary Judgment (Doc. 207); and (3) a motion to hold his motion to modify his sentence in abeyance pending resolution of his § 2255 Motion. (Doc. 208.) Williams' § 2255 Motion is now ripe for adjudication.

## II.    STANDARD OF REVIEW

### A.    Standard for Relief Pursuant to § 2255

A petitioner who moves to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

A petitioner seeking relief under § 2255 must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *see also Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). The petitioner has the burden of sustaining his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964; *see also McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." (citation omitted)).

It is well-established that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Indeed, to prevail under § 2255, a defendant "must show a 'fundamental defect' in the

8

proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Id.* (citing *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

As a general rule, constitutional or statutory challenges cannot be made for the first time in a § 2255 motion. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Instead, such challenges must be made on direct appeal or they are waived. *Id.* If a defendant procedurally defaults a claim by failing to raise it on direct appeal, the claim can only be raised in a § 2255 motion if the petitioner can show either: (1) cause to excuse his failure to raise the claim previously and "actual prejudice" resulting from the alleged violation; or (2) that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

## B.  An Evidentiary Hearing is Not Required

Under Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a court must first determine whether an evidentiary hearing is required after a review of the answer and the records of the case. If the motion, answer, and records of the case show conclusively that a petitioner is not entitled to relief under 28 U.S.C. § 2255, then there is no need for an evidentiary hearing. *See* 28 U.S.C. § 2255(b); *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

The Sixth Circuit has indicated that the petitioner's "burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith*, 348 F.3d at 550. Nevertheless, a hearing is not necessary if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

The Court finds that Williams is not entitled to an evidentiary hearing because, as articulated

9

below, the motion and records in this case conclusively show that he is not entitled to relief.

Accordingly, Williams' motions for status hearings (Docs. 213 and 214) are **DENIED as moot.**

III.    **ANALYSIS**

    A.    **Williams' § 2255 Motion is Time-Barred Under § 2255(f)(1).**

Motions brought pursuant to § 2255 are subject to a one year statute of limitations, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If, as the government argues, the limitations period is calculated from the date Williams' conviction became final, then his motion is untimely.  A judgment becomes final after judgment has been entered and the time for filing a direct appeal expires.  A notice of appeal must be filed with the district court within ten (10) days of the "entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i).[10]  If no direct appeal is filed, the judgment becomes final for § 2255 purposes ten days after it is entered. *Sanchez-Castellano v. United States*, 358 F.3d 424,

---

[10]In the 2009 Amendments to Fed. R. App. P. 4(b)(1)(A)(i), the time set for filing a notice of appeal is increased from 10 days to 14 days.  Because this Amendment was not in effect at the time of Williams' conviction, the Court utilizes the prior version of the rule.

428 (6th Cir. 2004); *United States v. Cottage*, 307 F.3d 494, 498-99 (6th Cir. 2002) (finding that, where a movant does not pursue a direct appeal, his judgment becomes final "on the date on which the time for filing such appeal expired").

Here, judgment was entered against Williams on March 12, 2003.  (Doc. 150.)  Because Williams did not file a direct appeal, his conviction became final 10 days later – on March 22, 2003. Therefore, Williams had until March 23, 2004 to file a timely motion to vacate.  Williams did not file the instant Motion until July 10, 2007, which is more than three years after the expiration of the one-year statute of limitations for filing his § 2255 motion.  As such, Williams' Motion is time-barred under § 2255(f)(1), and must be dismissed unless he can make use of one of the other triggering events set forth in § 2255(f).

**B.     Williams Cannot Invoke Section 2255(f)(3).**

Williams contends that his motion is timely based on § 2255(f)(3), because the right he asserts was first recognized by the Supreme Court in *Lopez v. Gonzales*, which was decided on December 5, 2006.[11]   At issue in *Lopez* was whether an illegal alien's state drug conviction, which was classified as a felony under state law, but a misdemeanor under the federal Controlled Substances Act ("CSA"), qualified as an "aggravated felony" under federal immigration law.[12]  The Supreme Court held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."  *Lopez*, 549 U.S. at 60.

---

[11]It is clear that neither § 2255(f)(2) nor § 2255(f)(4) are applicable here.

[12]The Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) ("the INA"), provides for deportation of any alien who has been convicted of an "aggravated felony."  *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time under after admission is deportable.").

The sole claim in Williams' Motion is that, in light of the *Lopez* decision, he was sentenced improperly as a career offender.[13]  Specifically, Williams argues that:

> [He] was convicted under California's Health and Safety Code § 11351.  That statute encompasses conduct that would not qualify as a "Controlled Substance" as defined in the Guidelines and/or the Lopez decision.  As a result, convictions under that statute do not categorically qualify as predicate offenses.

(Doc. 204 at 24.)  In other words, Williams asserts that, based on *Lopez*, his prior drug conviction was used improperly to enhance his sentence because it was neither a felony under the CSA nor a "controlled substance offense" under the Guidelines.

The government argues that Williams' reliance on *Lopez* is misplaced.  First, the government contends that, even if *Lopez* applies retroactively to cases on collateral review, it has no effect on Williams' sentence because he was charged with, and pled guilty to, possessing cocaine for sale – not simple possession.  Possessing cocaine for sale is both a "controlled substance offense" and a felony under the CSA.  Second, the government emphasizes that Williams pled guilty in this case pursuant to a negotiated plea agreement, and the parties agreed to a specific sentence which the Court imposed.

As the government correctly notes, Williams' sentence in this case was not enhanced under the Guidelines.  Instead, it was the product of an oral Rule 11(e)(1)(C) plea agreement whereby the parties agreed that Williams would be sentenced as a career offender to a term of imprisonment of 240 months.  Once the Court accepted Williams' plea, the plea agreement became binding on the

---

[13]Under the Sentencing Guidelines, a defendant is considered a "career offender" if: (1) he is at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions for either a controlled substance offense or a crime of violence. U.S.S.G. § 4B1.1(a).

12

Court and the parties.  Therefore, Williams cannot argue that the Court improperly applied the Guidelines or improperly enhanced his sentence under the Guidelines.  Recognizing, however, that Williams' status as a career offender informed the parties' stipulated sentence, the Court considers whether *Lopez* has any effect on the classification of his 1986 conviction as a "controlled substance offense" supporting his career offender status.

If, as Williams asserts in his Motion, *Lopez* creates a newly recognized right which applies to his case, then his Motion is timely pursuant to § 2255(f)(3), because it was filed within one year from the date on which *Lopez* was decided.  Conversely, if the government is correct, and *Lopez* does not have any effect on Williams' sentence, then his Motion is untimely and must be dismissed.

For the reasons articulated below, the Court finds that *Lopez* does not create a new right upon which Williams can rely.  Specifically, the Court finds that: (1) *Lopez* does not apply retroactively to Williams' sentence; and (2) even if *Lopez* applies, it does not change Williams' sentence because he qualified as a career offender under the Guidelines.  Accordingly, the Court finds that Williams cannot invoke § 2255(f)(3), and therefore his § 2255 Motion is time-barred pursuant to § 2255(f)(1).

### 1.    *Lopez v. Gonzales* Does Not Apply to Williams' Sentence.

As previously indicated, Williams' case become final on direct review on March 22, 2003 – well before *Lopez* was decided in 2006.  While neither the Supreme Court, nor the Sixth Circuit has addressed whether *Lopez* applies retroactively to cases on collateral review, and the majority of courts to have considered this issue have concluded that it does not.[14]  *See Tyler v. Cain*, 533 U.S.

---

[14] *See Mason v. United States,* No. 4:07-CV-933, 2008 U.S. Dist. LEXIS 73428, *5 (E.D. Mo. Sept. 25, 2008) ("There is no indication that *Lopez* was meant to apply retroactively to cases on collateral review and the Court declines to so apply it."); *United States v. Quintero-Quintero,* No. CR-04-42, 2008 U.S. Dist. LEXIS 96919, *9 (E.D. Wash. Nov. 21, 2008) (noting that "the Supreme Court has not ruled that *Lopez* applies retroactively to cases on collateral review");

656, 663 (2001) ("[A] new rule is not 'made retroactive to cases on collateral' review unless the Supreme Court holds it to be retroactive."). The Court agrees with this majority view. The Court finds, moreover, that, even if retroactive, *Lopez* has no bearing on Williams' sentence.

Although the parties do not brief this issue, it does not appear that *Lopez* would apply to Williams' sentence because courts have limited its holding to interpretation of the term "aggravated felony" in the <u>immigration</u> context. Williams, who is not an alien, has not offered any facts or arguments to demonstrate how *Lopez* is relevant to the circumstances of his case. Instead, he cites a Fifth Circuit decision for the general proposition that *Lopez* applies with equal force to both immigration and criminal cases. (Doc. 204 at 17-18) (citing *United States v. Estrada-Mendoza*, 475 F.3d 258, 260-61 (5th Cir. 2007).[15] Williams' reliance on this case is misguided.

As the court noted in *Estrada-Mendoza*, at the outset of the *Lopez* decision, the Supreme Court indicated that whether a crime is an "aggravated felony" has implications under the INA and U.S.S.G. § 2L1.2 ("unlawfully entering or remaining in the United States"), because the Guidelines

---

*United States v. Gooden*, No. 04-226, 2007 U.S. Dist. LEXIS 88965, *4 (W.D. Pa. Dec. 4, 2007) ("Although there is some split of authority, I am persuaded by those cases holding that *Lopez* is not retroactive on collateral review."); *Storeby v. United States*, No. 8:02-cr-65, 2007 U.S. Dist. LEXIS 39494, *5 (M.D. Fla. May 31, 2007) (finding that "*Lopez* is not retroactively applicable on collateral review"); *Ibarra-Martinez v. United States*, No. 8:93-cr-3-T, 2007 U.S. Dist. LEXIS 92151, *9 (M.D. Fla. Dec. 14, 2007) (finding that "Lopez involved only statutory interpretation . . . [and] is not retroactively applicable to cases on collateral review"); *but see United States v. Keyes*, 558 F.Supp.2d 1169, 1173 (D. Col. 2007) (concluding that "*Lopez* announced a substantive new rule of law that should be applied retroactively to this proceeding" but ultimately finding it limited to the immigration context).

[15]Williams also cites to *United States v. Hubbard*, 480 F.3d 341, 349-50 (5th Cir. 2007) (concluding that "aggravated sexual abuse, sexual abuse [and] abusive sexual conduct involving a minor" are "generic offenses," and finding that this conclusion is supported by the *Lopez* Court's method for construing the term "aggravated felony"). Williams does not, however, explain how *Hubbard* applies to his case, and the Court does not find it applicable. (*See* Doc. 204 at 18.)

14

adopted the INA definition of "aggravated felony." *Estrada-Mendoza*, 475 F.3d at 260 (citing *Lopez*,

549 U.S. at 50-51).  In other words, the *Lopez* Court made clear that it was addressing the definition

of an "aggravated felony" for purposes of the INA and § 2L1.2.  There is no indication that the Court

intended its opinion to extend beyond those parameters.  Indeed, the majority of courts that have

considered the issue have found that *Lopez* is limited to cases that involve interpretation of the term

"aggravated felony" in the immigration context.[16]

 Here, the sole issue presented in Williams' § 2255 Motion is whether his prior conviction

qualifies as a "controlled substance offense" under § 4B1.1 of the Guidelines such that it could be

used to establish his career offender status.  Since resolution of this issue involves neither an

---

 [16]*See Velasquez v. Ellis*, No. 06 CV 0241, 2008 U.S. Dist. LEXIS 14193, *2 (E.D. Cal. Feb. 26, 2008) ("The present case does not involve the INA, thus *Lopez* has no application."); *Stevenson v. United States*, No. 05-10262, 2010 U.S. Dist. LEXIS 23482, *6 (E.D. Mich. Mar. 15, 2010) ("The difference in the statutory terms and definitions in the INA and the Controlled Substances Act readily distinguish *Lopez* from the present case."); *United States v. Keyes*, 558 F.Supp.2d 1169, 1174 (D. Col. 2007) (noting that, "courts that have applied *Lopez* outside of 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228, and 1229b(a)(3) have limited its application to other uses of the term 'aggravated felony' in the immigration context"); *Lampton v. Menifee*, No. 07-0628, 2007 U.S. Dist. LEXIS 98374, *7 (W.D. La. Aug. 13, 2007) ("Further, since the resolution of petitioner's predicament does not turn on an interpretation of the 'aggravated felony' provisions of the INA, the holding of *Lopez, supra*, does not apply."); *United States v. McClain*, Nos. CR-03-0239, CV-07-0077, 2009 U.S. Dist. LEXIS 60864, *18 (E.D. Wash. June 30, 2009) ("Here, petitioner has not shown how *Lopez* is relevant to the circumstances of his case.  Inconsistent with *Lopez*, this case does not involve the INA, and *Lopez* is confined to cases concerning the INA."); *Rollins*, 2008 U.S. Dist. LEXIS 46701, at *3 ("Therefore, *Lopez* is not applicable in this situation and offers Rollins no relief as he is not an alien and he has not shown how a ruling concerning immigration law and the classification of offenses under the CSA applies to the calculation of his criminal history points."); *Mason v. United States,* No. 4:07-CV-933, 2008 U.S. Dist. LEXIS 73428, *6 (E.D. Mo. Sept. 25, 2008) ("*Lopez* concerned different language in a different statute, as it construed the term 'felony punishable under the Controlled Substances Act' in 18 U.S.C. § 924(c)(2).  As a result, the holding in *Lopez* is irrelevant to movant's conviction."); *Patton v. United States*, Case No. 04-20027, 2007 U.S. Dist. LEXIS 44927, *11-12 (E.D. Mich. June 20, 2007) (finding that *Lopez* "has no impact on the petitioner's sentence under the Controlled Substances Act, which contains discrete definitions that differ from the language of the INA").

interpretation of the "aggravated felony" provisions of the INA, nor § 2L1.2 of the Guidelines, the *Lopez* decision does not apply.

Instead, this case is more closely analogous to the Supreme Court's 2006 decision in *Salinas v. United States*, 547 U.S. 188 (2006).  In *Salinas*, the Court held that a conviction for simple possession is not a "controlled substance offense," and therefore may not be used to enhance a defendant's sentence under the career offender provision of the Sentencing Guidelines.  *Id*. Similarly, the Sixth Circuit has held that mere possession of a controlled substance, "without the proof beyond a reasonable doubt of the requisite intent to manufacture, import, export, distribute, or dispense is not a controlled substance offense" under § 4B1.2.  *United States v. Morelock*, No. 08-4695, 2010 U.S. App. LEXIS 5471, *12 (6th Cir. Mar. 15, 2010) (quoting *United States v. Montanez*, 442 F.3d 485, 488 (6th Cir. 2006)).

Regardless of whether *Lopez* or *Salinas* is more closely analogous, as discussed below, Williams' 1986 state drug conviction was for more than simple possession and therefore qualifies as a "controlled substance offense" under both the CSA and the Guidelines.  As such, neither *Lopez* nor *Salinas* provides Williams with any right to relief.

### 2. Williams' 1986 Conviction for Possessing Cocaine for Sale Constitutes a "Controlled Substance Offense" Under the Guidelines.

Even if *Lopez* applied retroactively to cases on collateral review and was on point, which it is not, Williams' Motion would nonetheless fail because his 1986 state drug conviction qualifies as a "controlled substance offense" supporting his career offender status.  Under the Guidelines, a "controlled substance offense" is defined as,

> an offense under a federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution or dispensing of a controlled substance . . . or the possession of a controlled substance

16

. . . with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine whether a prior conviction qualifies as a predicate "controlled substance offense" for purposes of § 4B1.1, a sentencing court applies the "categorical approach" set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 600 (1990).  *See United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006) (citing *United States v. Martin*, 378 F.3d 578, 581 (6th Cir. 2004)).  This approach generally requires that the court "look only to the fact of conviction and the statutory definition of the prior offense," and not undertake an analysis of the defendant's particular conduct.  *Taylor,* 495 U.S. at 602.  If, however, the relevant statute of conviction does not clarify whether the defendant committed a "controlled substance offense," then the court can consider the indictment or information and "either the jury instructions or plea agreement for the specific conduct with which the defendant was charged in order to appropriately characterize the offense."  *Galloway*, 439 F.3d at 323 (citing *Martin*, 378 F.3d at 581).

Where the defendant pleads guilty, the sentencing court can look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  *Shepard v. United States*, 544 U.S. 13, 26 (2005).  These documents are referred to as "*Shepard* sources."  *See United States v. Young*, No. 2007-cr-102, 2007 U.S. Dist. LEXIS 84941, *10 (W.D. Mich. Nov. 16, 2007).  The Sixth Circuit has found that "*Shepard*'s holding is fully applicable to Sentencing Guideline cases that require a court to determine the nature of a prior conviction when the defendant has a prior conviction under a generic statute that may or may not serve as a predicate for a sentencing enhancement."  *Galloway*, 439 F.3d at 323-24.

17

As previously indicated, in light of the parties' plea agreement and stipulated sentence, it was unnecessary for this Court to consider application of *Taylor* and *Shepard* to Williams' prior conviction at sentencing.  Even if the Court had engaged in this inquiry, it would have concluded that Williams' 1986 conviction qualifies as a "controlled substance offense."

Applying the framework set forth in *Taylor* and *Shepard*, the Court first looks only to the fact of conviction and the California statute's definition of the offense to determine whether Williams' prior conviction qualifies as a "controlled substance offense."  If California Health & Safety Code § 11351 criminalizes conduct that would not constitute a "controlled substance offense" under the Guidelines, the Court can consider *Shepard* sources to determine whether the offense Williams committed nonetheless falls within the definition of a "controlled substance offense."

### a.    California Health & Safety Code § 11351

In 1986, Williams pled guilty to violating California Health & Safety Code § 11351, which provides, in part, that:

> [E]very person who possesses for sale or purchases for purposes of sale (1) any controlled substance [specified in various sections of California law] shall be punished by imprisonment in the state prison for two, three, or four years.

Williams argues that § 11351 is "ambiguous, overbroad, and vague" because it "criminalizes both 'possession' and 'sales.'" (Doc. 204 at 24; Doc. 206 at 3.)[17]  To support this argument, Williams spends a significant portion of his briefing discussing cases holding that California Health & Safety

---

[17]Williams cites no case law supporting this proposition and a plain reading of the statutory language reveals that this is an incorrect interpretation.  By its terms, § 11351 criminalizes possession <u>for sale</u> and "purchases for purposes <u>of sale</u>."  There is no indication that it prohibits mere possession.  This is particularly true in light of the fact that another California statute – § 11350 – criminalizes mere possession of controlled substances.

Code §§ 11352, 11360, and 11379[18] – none of which he was convicted under – are overbroad.  (*See* Doc. 204 at 20-22).[19]  Because these statutes are not at issue here, the Court will not address them.

With respect to § 11351, however, Williams cites *People v. Parra*, 82 Cal. Rptr. 2d 541 (Cal. Ct. App. 1999) for the proposition that some controlled substances prohibited under § 11351 are not unlawful under the CSA.  (Doc. 204 at 19-20.)  Specifically, Williams contends that "California Courts define certain terms more broadly than do federal courts, and consequently, some acts prohibited by § 11351 are not unlawful under the CONTROLLED SUBSTANCES ACT."  (*Id*. at 19.)

The Court has not located any case law finding that § 11351 categorically constitutes a "controlled substance offense," and the parties have cited none.  The Ninth Circuit has found, moreover, that § 11351 encompasses conduct that would not qualify as a "controlled substance offense" as defined in U.S.S.G. § 4B1.1.  *United States v. Bowman*, 116 Fed. Appx. 840, 842 (9th Cir. 2004).[20]  In particular, this statute prohibits the possession of certain substances that are not

_____

[18]Notably, § 11352 criminalizes the unlawful transport, import, sale, administration, or gift of controlled substance, § 11360 addresses the unlawful transportation, importation, sale, or gift of marijuana, and § 11379 deals with the transportation, sale, or distribution of specified controlled substances (formerly classified as Restricted Dangerous Drugs).

[19]Specifically, Williams relies primarily on the following cases: *United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (prior conviction under § 11360(a)); *United States v. Casarez-Bravo*, 181 F.3d 1074 (9th Cir. 1999) (prior conviction under § 11360); *United States v. Martinez*, 232 F.3d 728 (9th Cir. 2000) (prior conviction under § 11360); *United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005) (prior conviction under § 11379); and *United States v. Gonzalez-Mercado*, 221 Fed. Appx. 356 (5th Cir. 2007) (prior conviction under § 11352).

[20]In *Bowman*, the court noted that, although the defendant was convicted under § 11351.5, the record of conviction referenced § 11351.  116 Fed. Appx. at 842, n.1.  The court indicated that this inconsistency was immaterial because, "these two statutes differ only in that § 11351 criminalizes possession for sale or purchase for sale of any controlled substance, while § 11351.5 criminalizes possession for sale or purchase for sale of cocaine base, as well as a slight difference in title."  *Id*.  In a recent 2009 decision, the Ninth Circuit held that prior conviction under

19

prohibited under federal law. *United States v. Mattis*, 14 Fed. Appx. 773, 775-76 (9th Cir. 2001) (noting that a person who possesses tilidine for sale could be convicted under § 11351, but could not be convicted under the CSA).

Even assuming that § 11351 is broader than federal law, and therefore Williams' prior conviction does not categorically qualify as a predicate offense under § 4B1.1, the Court can examine *Shepard* sources relating to Williams' prior conviction.

### b.    Consideration of *Shepard*-Approved Sources

It is well-established that possession of cocaine for sale is a "controlled substance offense" for purposes of career offender status under the Guidelines. *See United States v. Johnson*, No. 97-50245, 1998 U.S. App. LEXIS 8455, *2 (9th Cir. April 28, 1998) ("Because possession for sale of cocaine is a 'controlled substance offense' within the meaning of U.S.S.G. § 4B1.2(2), the district court properly sentenced Johnson as a career offender."); *see also United States v. Key*, 40 Fed. Appx. 545, 547 (9th Cir. 2002) (finding the defendant's prior conviction supported career offender status because the transcript from his sentencing hearing revealed that he pled guilty to Cal. Health & Safety Code § 11351).

The *Shepard* sources relating to Williams' 1986 conviction, which include a two-count Criminal Information and the transcript from Williams' guilty plea, establish that Williams was charged with – and pled guilty to – possessing cocaine for sale. Specifically, Count One of the Information charges, in pertinent part, that:

---

§ 11351.5 categorically constitutes a "controlled substance offense" for purposes of determining the defendant's status as a career offender under § 4B1.1. *United States v. Charles*, 581 F.3d 927, 934 (9th Cir. 2009). In this case, however, Williams' 1986 conviction was a conviction under § 11351 – not § 11351.5 – and there is no indication in *Charles* that the Ninth Circuit intended its decision to extend to § 11351.

> On or about October 29, 1985, in the County of Los Angeles, the crime of POSSESSION FOR SALE OF A CONTROLLED SUBSTANCE, in violation of HEALTH AND SAFETY CODE SECTION 11351, a Felony, was committed by PAUL ANTHONY MALCOLM and ANTHONY WILLIAMS, who did willfully and unlawfully have in his/her possession for sale a controlled substance, to wit, COCAINE.

(Doc. 204-1 at 2.)[21]  The transcript from Williams' plea colloquy similarly demonstrates that Williams pled guilty to possessing cocaine for sale:

> MS. WEIS:  Mr. Williams, as to you, in felony A-774240 charging you in Count I with a violation of Section 11351 of the Health and Safety Code, Possession for Sale of Cocaine, how do you now plead?
>
> WILLIAMS:  Guilty.
>
> MS. WEIS:  Do you admit the allegation pursuant to Section 11370 subdivision (A) - - subdivision (C) of the Health and Safety Code?[22]
>
> WILLIAMS:  Yes.
>
> MS. WEIS:  Are you pleading guilty because you are in fact guilty of the crimes charged?
>
> WILLIAMS:  Yes.

(Doc. 204-2 at 10:12-23.)

Contrary to Williams' suggestion that he was charged with, and convicted of, "mere possession," the Information establishes that he was charged with possessing cocaine for sale. Importantly, California law distinguishes between unlawful possession with intent to sell and mere possession, and it is clear that Williams was charged with the former. *Compare* Cal. Health & Safety

---

[21]Count two alleged violation of California Health & Safety Code § 11359 for unlawfully possessing marijuana for sale.  (*Id.*)

[22]Section 11370(a) provides that a person convicted of violating § 13351 is not eligible for probation or a suspended sentence if he has been previously convicted of certain controlled substances offense listed in subsection (c).

Code § 11351 (unlawful possession for sale) *with* § 11350 (unlawful possession).  In addition, because both the Information and the plea colloquy identify the controlled substance as <u>cocaine</u>, Williams cannot argue that he was convicted of possessing a controlled substance for sale that was prohibited by California law but not federal law.

By entering a guilty plea, Williams admitted all of the elements of the crime charged, including that he actually did possess cocaine for sale.  *See United States v. Gibney*, 519 F.3d 301, 305 (6th Cir. 2008) (stating that a defendant who enters a guilty plea "is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substance crime"); *see also United States v. Garcia-Medina,* 497 F.3d 875, 878 (8th Cir. 2007) ("In California, a guilty plea admits every element of the offense charged . . . including all accusations and factors comprising the charge contained in the pleading.").  Because Williams pled guilty to this charge, he is deemed to have committed the alleged conduct.  *See Gibney*, 519 F.3d at 305.  Therefore, Williams is now precluded from arguing that he merely <u>possessed</u> cocaine and did not <u>possess it for sale</u>.

Unlike the situation in *Lopez*, there is no indication that Williams had a state felony conviction that was improperly treated as a felony under federal law.  Because possessing cocaine for sale is a felony under the CSA and a "controlled substance offense" under the Guidelines, *Lopez* has no effect on Williams' sentence.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Williams' Motion to Modify Term of Imprisonment (Doc. 202) is **<u>DENIED</u>**, his Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 204) is **<u>DENIED</u>**, his Motion for Summary Judgment (Doc. 207) is **DENIED**, his Motion to Hold in Abeyance Motion to Modify Term of Imprisonment (Doc. 208) is **DENIED** as moot, and his two identical motions for Status

Hearings (Docs. 213 and 214) are **DENIED** as moot.  Williams' case, therefore, is **<u>DISMISSED</u>**.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.  In addition, the Court will not issue a certificate of appealability in this case, because Williams has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 20, 2010**